# City Of Winchester et al. v. Winchester Bank.

October 31, 1947.

Rehearing denied December 12, 1947.

Wm. J. Baxter, Judge.

Hays & Hays for appellants.

Harvey T. Lisle and S. T. Davis for appellee.

Opinion of the Court by Clay, Commissioner—Affirming.

This action was instituted by appellee (hereinafter referred to as "Bank") against appellant (hereinafter referred to as "City") to recover on two demand notes executed on behalf of the City January 1, 1944. One note was for $3,000 and the other was for $5,000.

The City by answer denied liability on two grounds: (1) the notes were renewals of former notes which were void because constituting debts in excess of the revenues of the City, and (2) the notes were executed by the City's Mayor without authorization of the City Commission. By way of counterclaim and set-off, the City alleged

in substance that it had, over the past 10 years, paid off 15 other notes held by the Bank aggregating approximately $69,000 which were void and unenforceable as obligations in excess of revenues for the particular years in which they were incurred. Judgment was asked against the Bank for these payments, with interest.

The lower Court sustained a general demurrer to the City's answer, counterclaim and set-off as amended, and a judgment was entered for the Bank as prayed.

The City's position appears to be that the notes sued on and the notes set out in the answer are now void because the City for several years had consistently expended more than its income from all sources. The City asserts that these notes represent obligations contracted in violation of Section 157 of the Kentucky Constitution.

Section 157 of the Kentucky Constitution provides in part: (our italics.)

"No county, city, town, taxing district, or other municipality, *shall be authorized or permitted to become indebted,* in any manner or for any purpose, *to an amount exceeding,* in any year, *the income and revenue provided for such year,* without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same."

The difficulty with the City's contention is that in its entire answer, counter-claim and set-off, consisting of 43 pages, it nowhere alleges that any obligation sued on or referred to constituted an indebtedness, *at the time it was made,* in excess of the income and revenue *provided* for that year. The City's allegation is that the notes "were contracted by the defendant in excess of the revenues levied, collected and deposited in the general fund of the City." This in insufficient to show a violation of Section 157 of the Kentucky Constitution.

It is a well established rule in this state that debts of municipalities constitute valid and binding obliga-

tions if, *at the time they were made,* they were legal. As stated in City of Covington et al. v. O. F. Moore Company, 218 Ky. 102, page 108, 290 S. W. 1066, 1068:

"If the contract was valid when made, it could not thereafter be invalidated by the city by making expenditures for other purposes in excess of its revenue for the year. Persons entering into contracts with a city are bound to take notice of the constitutional limitation and to know the rights and powers of the city officials to make contracts, but they are not bound to anticipate that illegal claims will be incurred by officers willing to violate the Constitution."

To the same effect are: Randolph v. Shelby County, 257 Ky. 297, 77 S. W. 2d 961; Geveden, County Treasurer, v. Fiscal Court of Carlisle County, 263 Ky. 465, 92 S. W. 2d 746; Penrod et al. v. City of Sturgis, 269 Ky. 315, 107 S. W. 2d 277.

The City, however, goes one step further and insists that, even if the debts were valid when entered into, the failure of the Bank to collect them in the year they were contracted constituted a forfeiture, and the obligations thereupon became void. We are unable to follow this argument.

The City refers us to Payne v. City of Covington, 276 Ky. 380, 123 S. W. 2d 1045, 122 A. L. R. 321, and insists that case "considers every conceivable feature of the case at Bar." We do not see the applicability of the Payne case to the situation before us, nor do we understand its effect to be that contended for by the City. It was there decided that Section 157 of the Constitution meant exactly what it said and our former holdings, recognizing as valid an indebtedness in excess of the revenue provided, but less than the revenue which could have been realized under a maximum tax levy, were erroneous. In that case we did not determine that an indebtedness valid when incurred became invalid when the debt limit was exceeded, nor did we decide that a valid obligation created in one year could not be collected in the succeeding year.

In City of Jackson et al. v. First Nat. Bank of Jackson, 289 Ky. 1, 157 S. W. 2d 321, decided subsequent to the Payne case, this Court considered several types

of obligations of the City of Jackson. We held that the City was liable on an over-draft to a bank where it was not pleaded or established that the amount of the over-draft exceeded the anticipated revenues for the year. We also held that the Bank could recover on a note of the City where it was not shown that current revenues had been exhausted at the time of its execution. With respect to warrants issued by the City, we stated, page 16 of 289 Ky., page 329 of 157 S. W. 2d:

"To show that any particular warrant was invalid it was incumbent on the City to plead and prove that at the time the indebtedness evidenced thereby was created the City had already expended or contracted to expend all revenue provided for that year. Waddle v. City of Somerset, 281 Ky. 30, 134 S. W. 2d 956. And after a valid debt is created it may not be invalidated by the incurring of other non-governmental debts and the expenditure of the year's revenue in payment thereof. Payne v. City of Covington, 276 Ky. 380, 123 S. W. 2d 1045, 122 A. L. R. 321."

The above decision shows clearly that we still adhere to the rule established prior to the Payne case, and a debt of a municipality, if valid when created, cannot be invalidated by subsequent illegal expenditures. To adopt the City's theory would practically destroy the ability of municipalities to obtain credit necessary to carry on their governmental functions.

Since the City failed to allege any facts showing the notes sued on and the other notes were illegal or invalid when executed, it failed to state a defense or set-off on constitutional grounds.

We likewise are of the opinion that the answer denying the authority of the Mayor to execute the renewal notes sued on did not constitute a defense. The objection seems to be that since both notes sued on were renewals and the original notes were invalid, the Mayor had no authority to perfect a void obligation against the City. We have already pointed out that the City failed to allege facts establishing the invalidity of the original notes.

The Mayor of Winchester was authorized by the Board of Commissioners on February 7, 1941 to "exe-

cute a note at the Winchester Bank for $3,000.00.'' On March 6, 1942, the Mayor was authorized by the Board of Commissioners to execute a similar note for $5,000. There does not appear specific authority to execute the renewals of these obligations on January 1, 1944. We are of the opinion, however, that specific authority was not required.

It is the accepted rule in this state that a renewal note does not extinguish the original obligation. Pool et al. v. First Nat. Bank of Princeton, 287 Ky. 684, 155 S. W. 2d 4. The record fails to disclose why the renewals were executed in 1944, since both notes had originally been payable on demand. We surmise that they were executd at the request of the Bank simply to bring its negotiable paper up to date. However that may be, these renewals did not constitute new or different obligations upon the part of the City. While the powers of municipal officers are strictly construed, they, like other agents, have implied authority to perform those acts necessary to carry out their prescribed duties. 12 McQuillin ''Municipal Corporations,'' Second Edition Revised, Section 519; 2 Am. Jur., ''Agency,'' Section 150. As the Mayor was lawfully authorized to incur the original indebtedness, he would have implied authority to execute additional evidence of it. This being so, the defense interposed by the City is insufficient.

The judgment of the Clark Circuit Court was correct, and it is affirmed.